This is a suit for Workmen's Compensation. Plaintiff alleges that while in the employ of the defendant he sustained severe injuries to his left knee in an accident which occurred on July 2, 1946, which has resulted in total and permanent disability *Page 281 
to do work involving manual labor or the use of his legs or any work of a reasonable character. He specifically alleges in Article 11: "That said Cities Service Refining Corporation has failed and refused to pay petitioner any compensation whatever despite amicable demand and still fails and refuses to pay him any compensation, and, consequently, a dispute exists between petitioner and said defendant as to the extent and duration of petitioner's injuries."
Plaintiff filed this suit on the 10th day of June, 1947.
On June 26, 1947 the defendant, through its counsel, filed an exception of prematurity for the following reasons:
"* * * Appearer denies that it refused or had occasion to refuse to pay petitioner any compensation because no demand or request has ever been made upon it for the payment of any compensation to plaintiff whatever. Appearer avers that it had no knowledge that any claim was being made or urged against it for compensation until the copy of the petition in this cause was served upon it."
"That therefore, under Sub-section (b) of Section 18 of Act 20 of the General Assembly of Louisiana for the year 1914, as amended, known as the Workmen's Compensation Act, said cause of action, if plaintiff has one, which appearer denies, is premature, which prematurity appearer especially pleads in bar of plaintiff's right to recover or judgment herein."
"That the issues raised by this exception are required to be determined under the provisions of the Workmen's Compensation Act in advance of the hearing on the merits of this cause."
After a hearing, the District judge by written reasons held that plaintiff's action was premature and dismissed plaintiff's suit at his cost and without prejudice. Plaintiff has appealed from the judgment of the Lower Court.
The testimony of the plaintiff was taken by deposition in Shreveport, Louisiana, to which testimony is attached four letters offered in evidence by the plaintiff. Plaintiff is relying upon his testimony and the four letters introduced by him to prove a refusal by the defendant to pay him compensation. The testimony of the plaintiff is to the effect that he was working for the defendant on July 2, 1946 at the Tutwiler refinery at Lake Charles, Louisiana, and that he injured his leg on that date; that he went to Dr. Lacour, who was in charge of the clinic at the refinery and that he received light treatment there for fifteen to eighteen days. The evidence fails to show the exact date he voluntarily left the employ of the defendant company but merely shows that he left Lake Charles sometime after the accident and went back to Shreveport.
On December 13, 1946, plaintiff wrote to Dr. Lacour in care of the Tutwiler Refinery with regard to the injury to his knee, which letter reads as follows:
"Shreveport, Louisiana December 13th, 1946.
Dr. Fritz Lacour c/o Tutwiler Refinery Lake Charles, La.
Dear Dr. Lacour:
I know you will recall the knee condition I had while employed there. Am still having trougle with it. Have tried bandadge and light and neither have helped. I would like your advice as to what I should do.
Will appreciate hearing from you.
Yours truly W.J. Hammett 841 Ratcliff Street Shreveport, Louisiana"
This letter was answered by Dr. Lacour on December 18, 1946 as Plaintiff's Exhibit No. 2 as follows:
 "Cities Service Refining Corporation The Tutwiler Refinery Lake Charles, Louisiana December 18, 1946
Mr. W.J. Hammett 841 Ratcliff Street Shreveport, Louisiana
My dear Mr. Hammett:
Your letter dated December 13th has been received.
I regret that you are having trouble and, under the circumstances, suggest that you see your family physician for appraisal and *Page 282 
treatment. It is hoped that your condition will not prove serious and recovery will be uneventful.
Seasons greetings.
Very truly yours,
Fritz LaCour, M. C."
Plaintiff's Exhibit 3 is another letter written by plaintiff to Dr. Lacour as follows:
"841 Ratcliff Street Shreveport, Louisiana February 28, 1947
Dr. Fritz LaCour, c/o Tutwiler Refinery Lake Charles, Louisiana
Dear Doctor LaCour:
Would you please check your records and advise me by return mail the date shown thereon that I injured my knee, while working at the Tutwiler Refinery in Lake Charles last year.
Thanking you, I am Yours Very truly W.J. Hammett"
The evidence shows that this letter was referred to L.D. McClatchey, Treasurer of the defendant company, and was answered by him on March 31, 1947:
 "Cities Service Refining Corporation 716 Hodges Street Lake Charles, Louisiana Telephone 8391 March 31, 1947
Mr. W.J. Hammett 841 Ratcliff Street Shreveport, Louisiana
Dear Sir:
Your February 28, 1947 letter to Dr. LaCour has been passed to me for handling.
According to our records you bruised your knee on July 2, 1946.
It is of course understood that the furnishing of this information is no admission of liability on our part.
Yours very truly L.D. McClatchey, Treasurer
LDM; js cc: A.H. Heitzler
Attention: Dr. LaCour"
Plaintiff further testified that he had worked for the defendant corporation prior to the time that he worked for them in Lake Charles and that a Mr. Welsh was the head man for approximately 12 years of the time he worked. That after he left Lake Charles and went to Shreveport he went to see Mr. Welsh in order to get a lighter job; that he told Mr. Welsh about his injury and that Welsh promised that if anything came up that he thought the plaintiff would be interested in, he would notify him. Plaintiff admitted under cross examination that Mr. Welsh was connected with Arkansas Fuel Oil Company who he thought was a subsiduary of the Cities Service Refining Corporation.
The plaintiff, therefore, is relying upon his visits to Mr. Welsh and the letters, Plaintiff's Exhibit 1 through Plaintiff's Exhibit 4, to show a refusal on the part of the defendant company to pay him compensation for his injury.
The record shows that Mr. J.A. Welsh, whom the plaintiff visited in Shreveport, was the sales manager of the Arkansas Fuel Oil Company, There is no proof that he was employed in any capacity by the defendant. The defendant corporation and Arkansas Fuel Oil Company are subsiduaries of the same parent company. Mr. McClatchey testified that his department had jurisdiction over workmen's compensation claims and that no claim or demand had been made on the defendant previous to the filing of the present suit by the plaintiff for compensation under the Compensation Act of Louisiana; that "the first knowledge that the defendant had of any demand for compensation was the institution of this suit and service on the defendant."
[1] Certainly plaintiff's visits and talks with Mr. Welsh would not and could not constitute a refusal on the part of the defendant to pay him compensation for the very simple reason that Mr. Welsh was in no wise connected with the defendant company.
Plaintiff also seems to be relying mainly upon the letter introduced as Plaintiff's Exhibit 4 from L.D. McClatchey, Treasurer of the defendant company, in answer to his letter of February 28th asking for the date on which he injured his knee. The main part of the letter of March 31st *Page 283 
which defendant contends shows a refusal to pay compensation is the last paragraph wherein the treasurer of the defendant company stated "It is of course understood that the furnishing of this information is no admission of liability on our part."
The compensation law provides that "neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this act." Acts 1914, No. 20, Sec. 18; 1920, No. 234, Sec. 1; 1920, No. 247, Sec. 1; 1926 No. 85, Sec. 1; 1930, No. 81, Sec. 1.
[2] Certainly then, the furnishing of the information contained in the letter introduced as Plaintiff's Exhibit 4 did not in itself constitute an admission of liability nor a refusal to pay compensation and, therefore, the mere addition in that letter of the Paragraph which stated that "the furnishing of this information is no admission of liability" was mere surplusage and cannot be considered as a refusal to pay.
Taking all the testimony, we do not believe that the plaintiff has shown a refusal on the part of the defendant to pay compensation as required by law.
The Supreme Court in the recent case of D'antoni v. Employers' Liability Assurance Company, 213 La. 67,34 So.2d 378, 381, held: "In the instant case, the Court of Appeal has taken a most narrow and technical view of Subsection 1(b) of Section 18 of the Employers' Liability Act. The opinion reflects the belief of the Court that, in order for an employee to prevent dismissal of his suit on the ground of prematurity, he must show that he has made formal demand on his employer for compensation and that the latter has formally refused. But the statute does not require a demand, formal or otherwise, by the employee and there is nothing contained in our decision in Hall v. Hillyer-Edwards-Fuller, Inc. 187 La. 959, 175 So. 633 (Cited and relied upon by the Court of Appeal), which justifies a contrary view. Albeit, the act merely prescribes that the employee allege that he is not being paid compensation and that the employer has refused to pay. * * *"
[3] We are of the opinion that the defendant has shown that the allegation in plaintiff's petition that the defendant had refused to pay compensation was without reasonable cause or reasonable foundation in fact. This the defendant was entitled to show under Subsection (b) of Section 18 of Act 20 of the General Assembly of Louisiana for the year 1914, as amended.
It is, therefore, ordered that the judgment of the District Court dismissing plaintiff's petition on the exception of prematurity be and the same is hereby affirmed.